The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts, with minor modifications, as those reached by the Deputy Commissioner, but modify the conclusions and holding of the Deputy Commissioner. In addition, the Full Commission reverses the Deputy Commissioner on the award of attorney's fees to plaintiff pursuant to N.C. Gen. Stat. § 97-88.1. The Full Commission, in their discretion, have reopened the record and received further evidence concerning the wages earned by plaintiff at his part-time employment and the unemployment benefits received by plaintiff.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Order, at the hearing and after the hearing as
 STIPULATIONS
1. The employer-employee relationship existed between the plaintiff and the defendant-employer, and the plaintiff was employed by the defendant-employer on October 9, 1995.
2. On October 9, 1995, while plaintiff was employed by the defendant-employer, the parties were subject to and bound by the provisions of the Workers' Compensation Act, and the defendant-employer was insured through the defendant-carrier, Reliance National.
3. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
4. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
5. Plaintiff's average weekly wage for the fifty-two (52) weeks preceding October 9, 1995 was $671.85, yielding a weekly compensation rate of $447.92, subject to verification.
6. The plaintiff's Workers' Compensation claim was denied on January 18, 1996.
7. The part-time wage and unemployment benefits information submitted by the plaintiff has been stipulated and received into evidence.
 *********** RULINGS ON EVIDENTIARY MATTERS
All objections contained in the depositions of Drs. Howard J. Jones and William O. Bell are OVERRULED.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was thirty-eight (38) years old and had three years of college education. Plaintiff was hired as a part-time reservationist by the defendant U.S. Air, Inc. on March 11, 1985, and was upgraded to full-time in 1987. Plaintiff's job duties consisted of sales presentations via telephone and using a computer to retrieve information concerning schedules and flight availability. The position of reservationist also required the constant repetitive use of the hands and fingers in a gripping, typing, flexing and extension type of activity. During an eight-hour shift, plaintiff was given two fifteen-minute breaks and a thirty-minute lunch.
2. Plaintiff began experiencing pain and discomfort in his left and right wrist in September 1995, and he sought treatment from Dr. Peter Robie, a family physician.
3. On or about October 9, 1995, plaintiff reported bilateral hand and wrist pain and forearm and elbow pain to his supervisor, Jackie McEachern. Plaintiff also requested reassignment to a position that did not require as much repetitive motion or, in the alternative, a ten-minute break from typing every hour, since he attributed his condition to overuse of the computer.
4. On October 12, 1995, upon referral from Dr. Robie, plaintiff was evaluated by Dr. William Bell, a neurosurgeon with experience in carpal tunnel syndrome and ulnar neuropathy. In the year prior to his deposition, Dr. Bell performed approximately ten to twenty ulnar nerve surgeries and fifty to sixty carpal tunnel releases.
5. Plaintiff continued to complain of pain and numbness in his hands and left elbow. The pain improved when he was not working, but his symptoms were aggravated while at work. A nerve conduction study performed February 14, 1996 showed evidence of left ulnar neuropathy at the elbow and borderline carpal tunnel syndrome on the right side. A physical exam revealed a positive Tinel's sign at the left elbow. Dr. Bell recommended left ulnar nerve decompression surgery which was performed by him on March 4, 1996.
6. The medical evidence indicates that the rapid repetitive motion required in plaintiff's employment with the defendant-employer caused his conditions. Additionally, Dr. Bell testified that plaintiff was at a greater risk of developing carpal tunnel syndrome and ulnar nerve neuropathy due to his occupation as a reservationist with the defendant-employer than the general public. Due to his conditions, plaintiff could not physically continue his position with U.S. Air, Inc. on a consistent eight hours a day basis.
7. The carrier recommended that the plaintiff be evaluated by Dr. Howard Jones, an occupational health care provider. On November 13, 1995, Dr. Jones evaluated the plaintiff and concluded that he suffered from symptoms of "unclear etiology" but diagnosed plaintiff with tendonitis. He returned the plaintiff to his regular duties with defendant-employer and stated that no permanency would be anticipated.
8. In his October 12, 1995 medical note, Dr. William Bell described plaintiff's condition as "pretty classic carpal tunnel syndrome bilaterally" and related plaintiff's pain and condition to plaintiff's use of the computer at work. Additionally, Dr. Bell removed plaintiff from work at this time. On January 17, 1996, Dr. Peter Robie wrote a note indicating that plaintiff had carpal tunnel syndrome which was likely caused by plaintiff's overuse or repetitive motion of his hands on the computer terminal at work. Plaintiff presented this note to his employer on the same date.
9. On January 18, 1996, employer's carrier issued a formal denial of his workers' compensation claim by way of an Industrial Commission Form 61 based on the contention that the plaintiff had not suffered an "injury by accident."
10. As a result of his left ulnar neuropathy and bilateral carpal tunnel syndrome, plaintiff was out of work from October 12, 1995 through November 13, 1995. He was also disabled from work from February 12, 1996, through May 20, 1996, at which time he was released to return to work at normal work activity and had reached maximum medical improvement. Plaintiff's return to work effort was unsuccessful as he was unable to work again from June 4, 1996 through June 10, 1996.
11. Dr. Bell advised the employer that plaintiff needed a position that did not require so much typing. The plaintiff tried to return to work with the defendant-employer, but he was advised that no light duty work was available within his restrictions. In addition, he was advised that if he took a position with another employer, he would be automatically terminated.
12. On or about October 15, 1996, plaintiff returned to work as a part-time assistant basketball coach, earning $800.00 per month. Initially, this position was to last until April 1997, but plaintiff was permitted to stay on until April 30, 1998.
13. As a result of the compensable occupational diseases, plaintiff sustained a five percent (5%) permanent functional impairment to each hand.
14. Based on the medical evidence in the record, greater weight is given to the medical opinions of Drs. Peter Robie and William Bell with respect to causation of plaintiff's conditions and his resulting disability.
15. Based on calculations derived from Industrial Commission Form 22 (Stipulated Exhibit #5), plaintiff's average weekly wage was $669.83, yielding a compensation rate of $446.57.
16. Defendants did not defend this matter without reasonable grounds.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's acquisition and aggravation of his left ulnar neuropathy and bilateral carpal tunnel syndrome were due to causes and conditions characteristic of and peculiar to his employment with defendant-employer, are not ordinary diseases of life to which the general public not so employed is equally exposed, and are, therefore, occupational diseases. N.C. Gen. Stat. § 97-53(13).
2. As a result of his contraction of a compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $446.57 per week, from October 12, 1995 through November 13, 1995; February 12, 1996 through May 20, 1996 and from June 4, 1996 through June 10, 1996. N.C. Gen. Stat. § 97-29.
3. As a result of his acquisition and aggravation of his left ulnar neuropathy and bilateral carpal tunnel syndrome, plaintiff sustained a five percent (5%) permanent partial disability to his left hand and a five percent (5%) permanent partial disability to his right hand. N.C. Gen. Stat. § 97-31.
4. As a result of his acquisition and aggravation of his left ulnar neuropathy and bilateral carpal tunnel syndrome, plaintiff is entitled to temporary partial disability compensation under N.C. Gen. Stat. § 97-30 from June 10, 1996 at varying rates in the amount of two-thirds of the difference between the plaintiff's pre-injury wages and plaintiff's actual earnings after developing the compensable occupational disease or plaintiff may receive permanent partial disability compensation for the disability rating to each of his hands under N.C. Gen. Stat. § 97-31.
5. Plaintiff has elected benefits under N.C. Gen. Stat. § 97-30. Plaintiff is entitled to receive such compensation until such time as he returns to work at a wage equal to or greater than he earned prior to his compensable occupational disease or until the statutory maximum 300 weeks.
6. Defendants are obligated to provide to plaintiff such medical treatment as is reasonably required as a result of his compensable occupational disease to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
7. Defendants are entitled to a credit for any unemployment benefits received by plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his compensable contraction of an occupational disease, defendants shall pay plaintiff temporary total disability compensation at the rate of $446.57 per week, from October 12, 1995 through November 13, 1995; February 12, 1996 through May 20, 1996 and from June 4, 1996 through June 10, 1996.
2. For plaintiff's partial disability, defendants shall pay plaintiff temporary partial disability compensation from June 10, 1996 at varying rates in the amount of two-thirds of the difference between the plaintiff's pre-injury wages and plaintiff's actual earnings after developing the compensable occupational disease on October 9, 1995. Plaintiff shall receive such compensation until such time as he returns to work at a wage equal to or greater than that he earned prior to his compensable injury or until the statutory maximum of 300 weeks. This compensation is subject to a credit for any unemployment benefits received by plaintiff, to the extent allowed under N.C. Gen. Stat. § 97-42.1 for partial disability. Compensation which has accrued shall be paid in a lump sum subject to the attorney's fee approved in paragraph four of this Award. Future compensation shall also be subject to an attorney's fee in paragraph four of this Award.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable contraction of an occupational disease.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraphs one and two of this AWARD is approved for plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of June 1998.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER